P & B LAND, INC., Plaintiff and Respondent,

v.

J.A. (Bud) KLUNGERVIK and Karen Klungervik, Defendants and Appellants.

No. 860167–CA.

Court of Appeals of Utah.

March 16, 1988.

J.A. Klungervik, pro se.

JoAnn Stringham, Vernal, for plaintiff and respondent.

Before GARFF, JACKSON and ORME, JJ.

## OPINION

JACKSON, Judge:

Klungerviks appeal from an adverse judgment totalling $102,489.50, consisting of a "partial default judgment" (entered after striking appellants' answer) and a subsequent "supplemental judgment." We vacate the judgment and remand.

On April 10, 1982, a document entitled "Joint Venture Agreement" was executed. The first paragraph reads:

J.A. "Bud" & Karen Klungervik as joint tenants with full rights of survivorship and P & B Land, Inc. to joint venture and sub-divide Green Fields Downs, a recorded PUD within Uintah County [sic].

The signature section at the end of the agreement consists solely of four individuals' signatures—those of J.A. "Bud" Klun-

gervik, Karen Klungervik, Robert M. McRae and Pat McRae. Paragraph 4 states that "an earnest money option will be executed by and between Robert M. McRae and P & B Land, Inc., the terms and conditions of which are included by reference." Because the option does not appear in the record, we do not know if it was ever executed or exercised. Paragraph 11 contemplates that Robert M. McRae or P & B Land, Inc. could add additional properties to the venture. Paragraphs 5 and 6 contemplate an equal allocation of costs, expenses and "excess proceeds" between P & B Land, Inc. and Klungerviks.

A two-page complaint seeking reimbursement from Klungerviks for joint venture expenditures was filed only by P & B Land, Inc. on December 3, 1984. The main allegation was that

3. Defendants have defaulted in the payment of costs and expenses in failing to pay their proportionate share thereof and *plaintiff's principals* have been called upon to make said payments.

4. Defendants are in default to plaintiff in the sum of $22,588.26.

(emphasis added).[1] Klungerviks filed a timely answer that admitted entering into a joint venture, but generally denied the specific allegations as to what that agreement said of their responsibilities and liabilities because no copy of the agreement was attached to the complaint they received.

Ten days later, on February 11, 1985, plaintiff filed a one-sentence Motion for Partial Summary Judgment: "Plaintiff moves this Court for a Partial Summary Judgment based on the pleadings and affidavits on file herein." The pleadings on file were the complaint and answer. The only affidavits on file were the December affidavit described in footnote 1 and another Pat McRae affidavit accompanying the

---

1. Although phrased by plaintiff as an action for default in payments under the joint venture agreement, the action essentially seeks an accounting of funds advanced to the joint venture by the McRaes, the principals in P & B Land, Inc., half of which the Klungerviks allegedly agreed to pay. An affidavit of Pat McRae, con-

taining a listing of payments advanced by McRaes to the joint venture and identifying Pat McRae as a "Joint Venturer in the Agreement dated April 10, 1982," was mailed directly to Klungerviks nine days after the complaint was filed.

missing copy of the Joint Venture Agreement mailed to defendants' counsel on February 4, 1985.

On February 19, 1985, plaintiff's counsel mailed a request for ruling on its motion directly to defendants, although the record shows them as still represented by counsel at that time. On the next day, defendants' counsel mailed to the court and to plaintiff's counsel a Motion for Extension of Time to Respond to Plaintiff's Motion. Attached was an unsigned affidavit of Bud Klungervik which counsel represented would be executed and filed in opposition to plaintiff's motion for partial summary judgment. In it, he claimed entitlement to an offset for rental of his equipment and for other goods and services provided to the joint venture, as well as for an unpaid debt owed to him by plaintiff that was unrelated to the joint venture.

On March 8, plaintiff's counsel filed a second one-line motion: "Plaintiff moves this Court to strike defendants' *belated response* on the grounds that the unsigned affidavit, even if signed, does not comply with Rule 56, Utah Rules of Civil Procedure" (emphasis added).

That same day, the trial court entered an order striking defendants' Answer and granting a partial default judgment for $20,854.24. Plaintiff was also granted the right to "further judgments" for additional monies advanced in furtherance of the joint venture agreement.

On May 1, 1985, plaintiff filed and served a Motion for Supplemental Judgment with the affidavit of Robert M. McRae, as an officer and director of plaintiff, requesting an additional $81,153.66. Plaintiff's request for ruling on this motion was filed May 9, 1985. The motion was granted in a signed minute entry dated May 17, 1985. A judgment was signed and entered the same day for a total of $102,489.50, the amount of the original partial default judg-

ment granted in March plus the supplemental judgment requested.

On June 17, Klungerviks filed a Motion to Set Aside Judgment. Several months later, while the motion was still pending, new counsel for defendants filed an Amended Motion to Set Aside Judgment which was supported by affidavits and by a memorandum of points and authorities. Defendants also filed motions to join both McRaes as either involuntary plaintiffs or as third-party defendants and to amend their answer to add a counterclaim. Each of defendants' motions contained a request for oral argument. Plaintiff filed documents in opposition to these motions. All of defendants' motions were denied, without hearing, in a signed minute entry dated December 10, 1985 and in an order issued ten days later.

This appeal raises the following issues: (1) Did the trial court err in striking the appellants' answer, converting partial summary judgment proceedings to default proceedings, and entering partial default judgment against them? (2) Did the trial court err in entering a supplemental final judgment on plaintiff's motion? (3) Should the persons who financed the joint venture and executed the joint venture agreement sued on herein be joined as necessary parties in the action?

■ Appellants were full-fledged combatants in this case. They retained counsel; he filed an answer and a motion for extension of time to respond to the motion for partial summary judgment. Neither has been ruled on. There was no motion to strike defendants' answer, but it was stricken.[2] Although the trial court has the inherent power to order the entry of a party's default,[3] this important step was completely skipped over in this case. There was no entry of default prior to the sua sponte entry of the default judgment. No default judgment may be entered under Utah R.Civ.P. 55(b)(2) unless default has

---

**2.** See Utah R.Civ.P. 12(f).

**3.** We regard Rule 55(a)(1) as vesting the clerk with authority—which the clerk would otherwise not have—to enter a party's default when

that default is clear from the record and its entry is a ministerial act. The rule does not set forth the exclusive method for the entry of default.

previously been entered.[4] *See DeTore v. Local 245, Jersey City Pub. Employees Union,* 511 F.Supp. 171, 176 (D.N.J.1981). "Thus, the entry of default is an essential predicate to any default judgment." *Id. See Russell v. Martell,* 681 P.2d 1193 (Utah 1984) (requiring trial court compliance with Rules 55 and 54(c)(2) in entering judgments against defaulting parties).

■ There was a motion for partial summary judgment in February 1985, but it was not supported by a memorandum of points and authorities, nor did it state any grounds or the material undisputed facts.[5] The only possible supporting affidavit was filed two months before the motion was made, was mailed directly to defendants, and was not served on defendants' counsel.[6] Thus, plaintiff's motion should have been denied. In addition, no time was fixed for hearing on the motion for partial summary judgment, and no hearing was ever held.[7]

■ Furthermore, plaintiff's Motion to Strike was served by mail on March 5, but filed and prematurely ruled upon on March 8. Appellants were not given timely service of the motion or adequate time to respond or request a hearing before the ruling. *See* Rule 2.8(b) and (g) of the Rules of Practice of the District Courts and Circuit Courts of Utah; Utah R.Civ.P. 6(d) and (e).

While it is true that defendants' response to plaintiff's motion for summary judgment left much to be desired, it was not so deficient as to warrant the striking of their answer. At most, the court might have disregarded defendants' response in evaluating the merits of the summary judgment motion.

■ In short, this case was not properly postured for the striking of defendants' answer and treatment of them as defaulters. The entry of a default judgment by a court with jurisdiction over the parties and the subject matter, where there is no default in law or in fact, is regarded as improper or illegal, and voidable. 47 Am.Jur. 2d *Judgments* § 1162 (1969). *See United States Bldg. & Loan Ass'n v. Soule,* 57 Idaho 691, 68 P.2d 40, 42 (1937). We hold that the partial default judgment was erroneously entered and incorporated into the May 17, 1985 judgment.

Since the partial default judgment was improper,[8] there is no foundation for the

---

4. Under Rule 55(a)(2), notice and service are (with some exceptions) no longer required on a party *after* the entry of his or her default. It is not proper for the trial court to pass over this part of the default process, i.e., by striking defendants' answer and implicitly entering their default, and proceed directly to entry of default judgment.

5. Rule 2.8 of the Rules of Practice of the District Courts and Circuit Courts states, in pertinent part:

   (a) All motions ... shall be accompanied by a brief statement of points and authorities and any affidavits relied upon in support thereof.
   . . . .
   (d) The points and authorities in support of a motion for summary judgment shall begin with a section that contains a concise statement of material facts as to which movant contends no genuine issue exists. The facts shall be stated in separate numbered sentences and shall refer with particularity to those portions of the record upon which movant relies.

6. Utah R.Civ.P. 6(d) states that, "[w]hen a motion is supported by affidavit, the affidavit shall be served with the motion...."

7. Under Utah R.Civ.P. 56(c), a motion for summary judgment "shall be served at least 10 days before the time fixed for the hearing." There was a request for ruling pursuant to Rule 2.8(g) of the Rules of Practice of the District Courts and Circuit Courts of Utah (apparently to satisfy Rule 56); however, contrary to Utah R.Civ.P. 5(b)(1), it was served on defendants instead of on their attorney. Thus, defendants' attorney never made a timely request for a hearing on the motion under Rule 2.8 because never properly notified that the motion had been submitted for decision.

8. Even if the default judgment was proper, there are other reasons why the supplemental portion of the May 17, 1985 judgment could not stand. The complaint alleged: "Defendants are in default $22,588.26." Judgment was entered for $20,854.24, an amount taken from the December affidavit discussed in footnote 1. In order to pursue recompense in excess of $22,588.26 for joint venture expenditures allegedly occurring subsequent to the filing of its complaint, plaintiff should have complied with Utah R.Civ.P. 15(d) by moving to supplement its complaint before judgment was entered in its favor. Instead, plaintiff simply moved for entry of a

supplemental judgment based thereon. We hold that the trial court erred in entering the so-called supplemental judgment incorporated into the May 17, 1985 judgment.

The judgment of the trial court dated May 17, 1985 is vacated, and the case is remanded to the district court for further proceedings not inconsistent with this opinion.[9] The appellants' answer is hereby reinstated as of the date this case is remitted to the district court.

In light of our remand of this case to the district court because the entry of the partial default judgment and the supplemental judgment was erroneous, we need not address the issue of whether McRaes are needed for a just adjudication of the disputes flowing from the parties' failed joint venture. Although the issue was briefed and argued before this court, it was not ruled on by the trial court. It can be determined on remand whether McRaes' presence is necessary for a full and fair determination of their rights and the rights of the other parties. *See* Utah R.Civ.P. 19(a); *Kemp v. Murray,* 680 P.2d 758 (Utah 1984).

GARFF and ORME, JJ., concur.

supplemental judgment. Appellants did not receive the reasonable notice required by the rule nor were any terms, just or otherwise, required of plaintiff before proceeding.

9. After the pleading process is finished, a master could be appointed by the court pursuant to Utah R.Civ.P. 53 to render an examination of the joint venture's accounts. Inasmuch as this is clearly an action requiring an accounting, the contributions and expenses of all parties should be examined in settling the respective accounts. Furthermore, the accounting should include the contribution of property involuntarily made by appellants by reason of the execution sale based on the erroneous May 17, 1985 judgment.